GRAYSON C. GARNER, APPELLEE, V. BURT M. MCCREA AND MARY A. MCCREA, APPELLANTS.

23 N. W. 2d 731

FILED JULY 12, 1946. No. 32081.

*Gordon Diesing* and *Gilbert S. Brown,* for appellants.

*Pilcher & Haney* and *Donald S. Krause,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

In this action the plaintiff seeks to quiet title in himself as against the defendants, Burt M. McCrea and Mary A. McCrea, to a residence property in Omaha, Nebraska, the legal description of which is more particularly set out in the pleadings. The defendants claim to be the owners by virtue of a parol contract made with Levi D. Garner, the father of plaintiff and the owner and holder of the legal title at the time of the making of the oral agreement. Defendants also claim title by adverse possession. The trial court found for the plaintiff and quieted the title in him as against the defendants, and the defendants appeal.

The plaintiff's claim of title rests upon a deed dated February 6, 1934, from Levi D. Garner and Iona May Garner to the plaintiff, said deed having been thereafter recorded in the office of the register of deeds for Douglas County on February 7, 1934.

It appears that the property in question was owned by Levi D. Garner and occupied by him and his wife until the death of his wife on August 3, 1931. The defendants produced the testimony of James M. McCrea, their son, who testified that on August 29, 1931, Levi D. Garner came to their home at about 7:30 a. m. and informed his parents, the defendants herein, that his home was in such a run-down condition that he could not rent it and that he would give the place to Burt McCrea if he would move in and repair and maintain the place, subject only to the condition

that he was to have a room for himself so long as he wanted it. James M. McCrea further testified that his father expressed the fear that Levi D. Garner might remarry and want the place back, to which he answered that he did not plan to marry again, that he would give him the place and that he did not expect to get it back. James M. McCrea says that his father, Burt M. McCrea, accepted the offer and that they proceeded to move in the same afternoon. There is much evidence by this witness concerning the run-down condition of the house and the repairs that were necessary to put it in livable condition. That the defendants performed much work and expended considerable money on the house is not disputed in the record. This witness was 23 years of age at the time of the trial and ten years of age at the time the conversations about which he testified occurred.

Mary McCrea, daughter of the defendants, testified that in May 1932, she heard her father, Burt McCrea, say to Levi D. Garner that he was thinking of tearing the porch down and that Garner replied: "Well, Burt, the place is yours; do as you please." It will be noted also that this witness was 20 years of age at the time of the trial and eight years of age at the time of the conversation to which she testified.

One William V. Rushlau testified that he had known Levi D. Garner for a good many years and that Garner had told him he had given the property to McCrea.

The evidence shows also that Levi D. Garner remarried in January 1934, and moved out of the premises. A few days later, February 6, 1934, the property was deeded to plaintiff, the son of Levi D. Garner; Garner's new wife joining in the execution of the deed.

Plaintiff testified that he attended the funeral of his mother on August 6, 1931, and that on the day following he and his father, Levi D. Garner, called at the McCrea home and made an offer to Burt M. McCrea to the effect that he could move his family into the Garner home, that the McCreas should pay the equivalent of $40 per month as

rent, the taxes to be paid in cash and the balance to be paid by work, repairs and upkeep on the property and by the furnishing of a room for the use of Levi D. Garner. Plaintiff says the McCreas agreed to the offer. Plaintiff testified that he never again talked to the McCreas about the deal and the only correspondence was a letter he wrote them in April 1943, in which he told them of his intention to sell the property.

On April 9, 1943, Grayson Garner wrote the Amos Grant Realty Company with reference to a listing of the property for sale. Amos Grant says that he called on the McCreas pursuant to plaintiff's letter and that Burt M. McCrea told him he had lived there since 1931 and had kept the place in repair. He testified also that McCrea said that Levi D. Garner had told him he could live in the premises for five years after his death and that he would insist upon a settlement before moving out. Grant testified that McCrea made no claim of ownership at this time.

There is evidence that plaintiff employed Donald S. Krause as his attorney. Krause testifies that he called upon the McCreas on two occasions. In the first conversation McCrea told him that he had an agreement with Grayson C. Garner, the plaintiff, whereby he took care of all maintenance and paid the taxes in lieu of rent. About three weeks later Krause says he called on them again and that he was told by Burt McCrea that he was to have five years free rent after Levi D. Garner's death and suggested a settlement of $1,800. Krause also says he knew of no claim of ownership by the McCreas until March 28, 1944, when McCrea reported his reasons to the Office of Price Administration for refusing to give possession.

The record shows that Levi D. Garner paid the taxes on the property to and including 1934. From 1934 to 1940, McCrea paid the taxes and took receipts in the name of Levi D. Garner as owner. From 1940 to the date of trial, McCrea paid the taxes and took receipts in the name of Grayson C. Garner as owner. Levi D. Garner paid the in-

surance on the property to 1934 and plaintiff paid it thereafter. There is evidence in the record that water and gas applications made to the Metropolitan Utilities District by Mrs. Burt M. McCrea showed Levi D. Garner as owner and Burt M. McCrea as tenant. An application for electric service was shown to have been made to the Nebraska Power Company in which Mrs. Burt M. McCrea signed up as a renter. It is also shown that Grayson C. Garner and his wife mortgaged the premises in 1937. E. G. Miller, a loan appraiser, says he questioned the parties in possession and that they were shown as tenants paying a monthly rental of $40. The evidence also shows that defendants knew of the deed to Grayson C. Garner for more than four years prior to the date of the trial on November 29, 1944.

The defendants deny that Grayson C. Garner ever talked with them regarding the use of this property. They contend the only conversation was with Levi D. Garner on August 29, 1931, a date when plaintiff admittedly was at his home in Duluth, Minnesota. They deny the statements credited to them by Amos Grant and Donald Krause. They deny, also, that Miller, the loan appraiser, ever talked with either of them as he testified.

It is upon the foregoing evidence that defendants base their claim to ownership. The law is settled that a party who has a direct legal interest in the result of a suit is precluded by section 25-1202, R. S. 1943, from testifying against the representative of a deceased person as to any transaction or conversation between the witness and such deceased person, except as specified in the statute. Owens v. Reed, 141 Neb. 796, 4 N. W. 2d 914. The wife of one claiming title under a parol agreement from a deceased person is likewise barred from testifying by the same statute. Holladay v. Rich, 93 Neb. 491, 140 N. W. 794; Oft v. Ohrt, 128 Neb. 848, 260 N. W. 571.

Equity will grant specific performance of a parol contract to convey real estate to another where the terms of the contract are established by evidence that is clear,

convincing, and satisfactory, and where it has been wholly performed by one party and its nonfulfillment would amount to a fraud on that party. Craig v. Seebecker, 135 Neb. 221, 280 N. W. 913.

In holding that the parol agreement was not established by clear, convincing, and satisfactory evidence, the trial court undoubtedly took into consideration the conduct and actions of the defendants, which were inconsistent with a claim of title. It is undisputed that from 1931, the date of the alleged oral agreement, until 1934 the taxes on the property were paid by Levi D. Garner, the record owner. This is competent evidence of his ownership after the date of the alleged oral agreement. The defendants paid the taxes after 1934, taking receipts in the name of Levi D. Garner until 1940, when they discovered that the property had been deeded to Grayson C. Garner, after which they took the receipts in the latter's name. The insurance on the property was at all times paid by Levi D. Garner or Grayson C. Garner. The property was mortgaged in 1937 by Grayson C. Garner, the mortgage placed on record, and no complaint made by defendants. It is true, they testify that they had no knowledge that the property had been mortgaged. In this respect, the loan appraiser testifies that the parties in possession were interrogated as to their interest in the property and the answers which were noted on his report bear a striking resemblance to the transaction as testified to by the plaintiff. The applications made for electricity, gas, and water are all consistent with the claims of the plaintiff. The defendants were obliged to unequivocally deny testimony given by the representative of the Amos Grant Realty Company, Attorney Donald S. Krause, and the representative of the mortgagee who made the loan on the property in 1937; all of whom had testified to the effect that defendants, at the various times they talked to them, made no claim of ownership. The trial judge undoubtedly considered that the two main witnesses of the defendants were testifying to detailed conversations after a

lapse of more than 12 years and which occurred when they were ten and eight years of age respectively. It will be noted also that defendants knew of the transfer of the property to plaintiff by Levi D. Garner for almost two years before the death of Levi D. Garner on December 21, 1942, without taking any legal action to protect their alleged interests. We think that the trial judge, after giving consideration to these matters, was amply justified in holding that defendants had failed to sustain their case by clear, convincing, and satisfactory evidence necessary to take the parol agreement from the operation of the statute of frauds.

The defendants contend that they have obtained title by adverse possession. It is the rule in this state that the claim of title to land by adverse possession, to be effective, must be proved by actual, open, exclusive, and continuous possession under claim of ownership for the statutory period of ten years. Wells v. Tietge, 143 Neb. 230, 9 N. W. 2d 180. Our holding that defendants did not take possession of the property in question as owners requires the consideration of another applicable rule. The defendants, not having entered the possession of the property as owners, but under some other and different agreement involving the payment of taxes and the making of repairs in lieu of rent, are in no position to assert ownership by adverse possession unless and until they surrender possession or by some unequivocal act notify the landlord that they no longer hold under the agreement made. Reed v. Wellman, 110 Neb. 166, 193 N. W. 261. In Weisel v. Hobbs, 138 Neb. 656, 294 N. W. 448, we said: "Possession by permission of the owner can never ripen into title by adverse possession until after such change of position has been brought home to the adverse party." See Kennedy v. Gottschalk, 138 Neb. 842, 295 N. W. 813. The occupancy of the premises not being that of an owner, it was of necessity permissive. There is no evidence in the record of any notice or unequivocal act having the effect of notice, that defendants were no longer holding under the lease or other contract made and were thereafter

holding possession under claim of ownership. The statute of limitations does not begin to run under such circumstances until the record owner has been informed by some unequivocal act that the occupant claims title against the world.

There was evidence produced in support of the motion for a new trial to the effect that plaintiff had not received his deed from Levi D. Garner until after the death of Levi D. Garner, and the deed being undelivered at the death of the grantor, no title was acquired by the plaintiff thereby. This evidence is of no benefit to the defendants, who must recover, if at all, upon the strength of their own title and not by any weakness in the title of the record owner. There was no error in refusing to grant a new trial on the basis of this newly discovered evidence for the reason that it had no bearing on the result as between the parties to the suit.

The trial court did not err in quieting the title to the property in the plaintiff as against the defendants Burt M. McCrea and Mary A. McCrea.

AFFIRMED.