SACRED HEART FARMERS COOPERATIVE ELEVATOR
v. JOHN ARLAN JOHNSON.

232 N. W. 2d 921.

September 12, 1975—No. 45289.

*Simmons & Hunt* and *Thomas J. Simmons*, for appellant.
*Berg & Dieterich* and *Neil B. Dieterich*, for respondent.

Heard before Rogosheske, Yetka, and Scott, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Plaintiff, Sacred Heart Farmers Cooperative Elevator, brought action alleging a breach of an oral contract for sale and delivery of 30,000 bushels of corn by defendant, John Arlan Johnson. Defendant denied the existence of a contract and further claimed any such contract void for lack of a writing as required by the statute of frauds provisions of the Uniform Commercial Code, Minn. St. 336.2—201. The case tried in district court before a jury, which found by answers to questions on special verdict that an oral contract was entered into, that plaintiff, in reliance on the contract with the knowledge of defendant, acted to plaintiff's detriment, and that plaintiff incurred damages of $6,900. The trial judge ordered judgment accordingly. Defendant's post-trial motion for judgment notwithstanding the verdict or for a new trial was denied, the trial judge stating in his accompanying memorandum that defendant was equitably estopped to assert the statute of frauds. Defendant appeals. Regarding our recent decision in Del Hayes & Sons, Inc. v. Mitchell,

304 Minn. 275, 230 N. W. 2d 588 (1975), as controlling, we hold that defendant is not estopped to assert the statute of frauds as a complete defense to this action and reverse.

Plaintiff is a cooperative operating a grain elevator located at Sacred Heart, Minnesota, and defendant is a farm owner who came to plaintiff's elevator on January 19, 1973, intending to pick up feed and to arrange for the sale of his corn crop. Although defendant denies that any contract was entered into at that time, the jury found, with abundant support in the record, that discussions between defendant and plaintiff's manager resulted in an oral contract by which defendant agreed to sell to plaintiff 30,000 bushels of corn at $1.22 per bushel for delivery within 60 days or whenever boxcars should become available. At the time of the oral agreement, plaintiff's manager placed a long-distance phone call to a Minneapolis grain dealer and arranged for the resale of the corn. Defendant heard the negotiated resale and asked a bystanding farmer to help him haul the corn to plaintiff's elevator. During the ensuing months of February, March, and April, defendant visited plaintiff's elevator several times to inquire about hauling in his corn. Plaintiff declined to take delivery during those months, presumably due to the unavailability of boxcars. On May 11, plaintiff requested delivery. Defendant, having begun delivery of the corn to another elevator on May 8 for $1.36 per bushel, refused to deliver to plaintiff and denied that the contract existed. On May 11, the price of corn posted at plaintiff's elevator was $1.45 per bushel.

The sole issue on this appeal is whether the doctrine of equitable estoppel applies to prevent defendant from raising the statute of frauds, Minn. St. 336.2—201, to render the contract unenforceable for the lack of a writing.[1] It is clear that the principles

---

[1] No question of promissory estoppel is presented as that doctrine is applicable to imply a contract in law where none exists in fact and here the jury found as fact upon sufficient evidence that an oral contract existed. Del Hayes & Sons, Inc. v. Mitchell, 304 Minn. 275, 230 N. W. 2d 588 (1975).

of equitable estoppel supplement the statute of frauds as well as other Uniform Commercial Code provisions under § 336.1—103 and may in a proper case serve to take a contract out of the statute of frauds. The facts presented here, however, are legally indistinguishable from those we dealt with in our recent denial of an estoppel in Del Hayes & Sons, Inc. v. Mitchell, *supra*. In that case, which we believe controls our decision here, we referred to the elements of equitable estoppel set forth at 3 Pomeroy, Equity Jurisprudence (5 ed.) § 805, and commented that no representation of fact was made to render the seller's conduct so unconscionable or akin to fraud as to require estopping him from raising the statute of frauds. Similarly, the sole conduct of defendant complained of here is his failure to deliver the corn when requested to do so pursuant to the oral agreement. Defendant made no factual representations the truth of which he now seeks to deny, nor were any of his actions so tainted with unfair dealing or deception as to approach the level of fraud and preclude him in equity from invoking the statute of frauds. From his visits to the elevator inquiring when he could start delivering the corn, we infer that defendant was willing to make delivery during the period prior to the time when the pressures of his crop-spraying business apparently made it burdensome for him to do so. The effect of this inference is to remove any suspicion that defendant was seeking to deceive, defraud, or otherwise take unfair advantage of plaintiff by the oral contract.

Nor was plaintiff's reliance on the sale in making his resale so great as to require an estoppel. As we noted in Hayes, there is always some degree of reliance on an oral contract. To take a contract out of the statute of frauds on the basis of the buyer's reliance in reselling would be to seriously weaken the force of the statute of frauds and, in the typical grain transaction between a seller and a grain elevator, to render the statute entirely meaningless since the grain elevator typically purchases grain solely for resale. We are mindful that the situation may arise where the character and magnitude of the detrimental reliance

of the party seeking an equitable estoppel may be so great as to require, upon equitable principles, taking a contract out of the statute of frauds. See, Oxley v. Ralston Purina Co. 349 F. 2d 328 (6 Cir. 1965). We believe that such a level of detrimental reliance has not been reached here. That belief, coupled with (1) the freedom of defendant from any taint of fraudulent practice and with (2) our desire not to apply an equitable principle to such an extent as to render meaningless the statute of frauds, compels us to reverse.

Reversed.